# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA and KNOX COUNTY, TENNESSEE, *ex rel*, LYNNE LIDDINGTON, DIRECTOR OF AIR QUALITY MANAGEMENT FOR KNOX COUNTY, TENNESSEE, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | NO: 3:16-cv-471 |
| CEMEX, INC., CEMEX CONSTRUCTION MATERIALS SOUTH, LLC and CEMEX CONSTRUCTION MATERIALS ATLANTIC, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and Lynne Liddington on relation of Knox County, Tennessee, by the authority granted by the Code of Knox County, Tennessee and through the undersigned attorneys (collectively, the "Plaintiffs"), allege as follows:

## NATURE OF THE ACTION

1. This is a civil action brought against Defendant Cemex, Inc.; Cemex Construction Materials Atlantic, LLC ("Cemex Atlantic"); and Cemex Construction Materials South, LLC ("Cemex South") (collectively "Cemex" or "Defendants"), pursuant to Sections

113(b) and 167 of the Clean Air Act ("Clean Air Act" or the "Act"), 42 U.S.C. §§ 7413(b) and 7477, for injunctive relief and the assessment of civil penalties for violations of one or more of the following statutory and regulatory requirements of the Act at Cemex Atlantic's Knoxville, Tennessee Portland cement plant and Cemex South's Odessa, Texas Portland cement plant: the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-7492; the federally-approved and enforceable state implementation plans ("SIPs"), which incorporate and/or implement the above-listed federal PSD requirements; Title V of the Act, 42 U.S.C. §§ 7661-7661f; and Title V's implementing federal and state regulations.

2. The Plaintiffs seek an injunction ordering Defendants to substantially reduce their emissions of nitrogen oxides ("$NO_x$") at their Portland cement plants by undertaking remedial measures and operational improvements in such a manner that would resolve Defendants' violations, alleged herein, of the PSD and Title V requirements of the Act.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter herein and over the Parties pursuant to Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b), 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, 1355 and 1367(a).

4. Venue is proper in this District pursuant to Section 113(b) of the Act, 42 U.S.C. §§ 7413(b), and under 28 U.S.C. §§ 1391(b) and (c) and 1395(a) because violations which support this Complaint have occurred in this District, a Portland cement plant at issue is operated by Cemex Atlantic in this District, and Cemex Atlantic resides in this District.

## AUTHORITY AND NOTICES

5. Authority to bring this action is vested in the United States Department of Justice under Section 305 of the Act, 42 U.S.C. § 7605, and 28 U.S.C. §§ 516 and 519. As regards the

2

violations at the Knoxville Facility, authority is further vested in Knox County, Tennessee under Tenn. Code Ann. § 5-1-106 and in Lynne Liddington as the Director of Air Quality Management for Knox County, Tennessee by the Code of Knox County, Tennessee Sec. 26-37, and by Knox County Air Quality Management Regulation ("KCAQMR") § 30.1 *et seq*.

6. EPA has provided notice of the violations alleged herein to Defendants and to the states of Texas and Tennessee, pursuant to Section 113(a) of the Act, 42 U.S.C. § 7413(a).

7. More than thirty days have elapsed since the notice referred to in the preceding paragraph.

8. The United States has provided notice of the commencement of this action to the Texas Commission on Environmental Quality ("TCEQ"), in accordance with Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## **DEFENDANTS AND THE FACILITIES**

9. Defendant Cemex, Inc. is a Louisiana corporation, and maintains its corporate headquarters at 929 Gessner Road, Suite 1900, in Houston, Texas. At times relevant to this complaint, Defendant Cemex, Inc. has manufactured Portland cement at a facility located at 6212 Cement Plant Road, Knoxville, Knox County, Tennessee (the "Knoxville Facility").

10. At times relevant to this complaint, Cemex, Inc., either under its present name or under its previous name, Southdown, Inc., owned or operated the Knoxville Facility.

11. Cemex Construction Materials Atlantic, LLC is a Delaware limited liability company that was formed on or about August 1, 2008.

12. On information and belief, Cemex Construction Materials Atlantic, LLC is a present owner or operator of the Knoxville Facility.

13. Cemex Construction Materials South, LLC is a Delaware limited liability company that was formed on or about December 31, 2009.

14. On information and believe, at times relevant to this complaint, Cemex, Inc. and Cemex Construction Materials South, LLC have owned or operated the Cemex Odessa Facility at 16501 West Murphy Street, Odessa, Ector County, Texas (the "Odessa Facility"), where Portland cement is manufactured.

15. Each Defendant is a corporation and therefore a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

The National Ambient Air Quality Standards

16. Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for those air pollutants ("criteria pollutants") for which air quality criteria have been issued pursuant to Section 108 of the Act, 42 U.S.C. § 7408. The primary NAAQS are to be adequate to protect the public health with an adequate margin of safety, and the secondary NAAQS are to be adequate to protect the public welfare, from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

17. Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is termed an

"attainment" area. An area that does not meet the NAAQS is termed a "nonattainment" area. An area that cannot be classified due to insufficient data is termed "unclassifiable."

18. At times relevant to this complaint, Defendants' Facilities have been located in areas classified as attainment and/or unclassifiable for $NO_x$.

19. Pursuant to Section 110 of the CAA, 42 U.S.C. § 7410, each State must adopt and submit to EPA for approval a State Implementation Plan ("SIP") that provides for the attainment and maintenance of the NAAQS. The States of Tennessee and Texas have adopted SIPs that have been approved by the EPA. 40 C.F.R. Part 52, Subparts RR and SS. After such provisions are approved by EPA, these provisions constitute a state's "applicable implementation plan," within the meaning of Sections 113(b) and 302(q) of the CAA, 42 U.S.C. §§ 7413(b) and 7602(q), and are considered the SIP. These SIPs are enforceable by the respective states in which they are adopted and, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), by the United States.

20. Section 110(a)(2)(C) of the CAA, 42 U.S.C. § 7410(a)(2)(C), requires each SIP to include, *inter alia*, a permit program to regulate the modification and construction of any stationary source of air pollution as necessary to assure the NAAQS are achieved.

The Statutory Prevention of Significant Deterioration Requirements

21. Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration ("PSD") of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS. These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the

5

consequences of such a decision and after public participation in the decision making process. 42 U.S.C. § 7470. These provisions are referred to herein as the "PSD program."

22. As part of the PSD program, Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the construction and operation of a "major emitting facility" in an area designated as attainment or unclassifiable unless a permit has been issued that comports with the requirements of Section 165 and the facility is subject to Best Available Control Technology ("BACT")[1] for each pollutant subject to regulation under the Act that is emitted from the facility. Further, Section 165(a)(3) of the Act, 42 U.S.C. § 7575(a)(3), allows issuance of a PSD permit only if "the owner or operator of such facility demonstrates, as required pursuant to section 7410(j) of this title, that emissions from construction or operation of such facility" will not compromise compliance with applicable air quality standards.

23. Section 169(2) of the Act, 42 U.S.C. § 7479(2), defines "construction" as including "modification" as defined in Section 111(a) of the Act. "Modification" is defined in Section 111(a) of the Act, 42 U.S.C. § 7411(a), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

24. Section 161 of the Act, 42 U.S.C. § 7471, requires that each applicable SIP contain a regulatory PSD program. A state may comply with this requirement by having its own PSD regulations approved by EPA, which must be at least as stringent as EPA regulations set

---

[1] Section 169(3) of the Act, 42 U.S.C. § 7479(3) defines BACT, in pertinent part, as "an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this chapter emitted from or which results from any major emitting facility which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines if it is achievable for such facility . . . ."

forth at 40 C.F.R. § 51.166. Upon EPA approval, state PSD requirements are federally enforceable under Section 113 of the CAA, 42 U.S.C. §§ 7413(a), (b); 40 C.F.R. § 52.23.

25. If a state does not have a PSD program that has been approved by EPA and incorporated into the SIP, the federal PSD regulations set forth at 40 C.F.R. § 52.21 shall be incorporated by reference into the SIP. 40 C.F.R. § 52.21(a).

Applicable PSD Regulations in Knox County Portion of Tennessee SIP and in Texas SIP

26. Knox County has been delegated authority by the State of Tennessee to administer an implementation plan under the Act for sources within Knox County. *See* 54 Fed. Reg. 31,953 (Aug. 3, 1983). Accordingly, EPA first approved Knox County's administration of a PSD program under the Tennessee SIP in 1993. *See* 58 Fed. Reg. 25,776 (April 28, 1993); 40 C.F.R. § 52.2220, Table 3 (listing EPA-approved Knox County Regulations); and Knox County Air Quality Management Regulations ("KCAQMR"), Section 45 ("Knox County's PSD Regulations"). EPA has approved various amendments and revisions to the Knox County portion of the Tennessee SIP since then. *See e.g.*, 72 Fed. Reg. 265 (January 4, 2007).

27. Texas administers a PSD program which was originally approved by EPA on June 24, 1992. *See* 57 Fed. Reg. 28,093 (June 24, 1992); 40 C.F.R. §§ 52.2270(c), 52.2299(c), 52.2303. Effective October 20, 1997, the Texas PSD regulations were recodified under Title 30, Section 116.160 of the Texas Administrative Code. *See* 62 Fed. Reg. 44,083, 44,085 (Aug. 19, 1997). Since then, EPA has reviewed and approved various amendments and revisions to the Texas SIP. *See*, *e.g.*, 69 Fed. Reg. 43,752 (July 22, 2004); 40 C.F.R. §§ 52.2270, 2273 (identification of Texas SIP). At the time of the modifications to the Odessa Facility alleged herein, the Texas PSD program incorporated by reference certain sections of EPA's PSD regulations codified at 40 C.F.R. § 52.21. *See id.* at 44,084; 30 Tex. Admin. Code § 116.160.

7

28. Applicable PSD provisions in the Knox County portion of the Tennessee SIP and the Texas SIP have at all times relevant to this Complaint prohibited construction of a "major modification" without, among other things, obtaining a PSD permit, undergoing a BACT determination, and applying BACT pursuant to such determination for each relevant pollutant. *See* KCAQMR § 45.1.A.3, 17, 19; 30 Tex. Admin. Code §§ 116.110, 116.111(a)(2)(C), 116.160.

29. The definitions contained in the PSD regulations in the Knox County portion of the Tennessee SIP and the Texas SIPs have at all times relevant to this Complaint defined "major modification" to include any physical change or change in the method of operation of a "major stationary source" that would result in a "significant" net emissions increase of any pollutant subject to regulation under the CAA. KCAQMR § 45.1.A.27; 30 Tex. Admin. Code § 116.160 (incorporating the federal PSD definition of "major modification" at 40 C.F.R. § 52.21(b)(2)(i) (1996)).

30. Applicable provisions in the PSD regulations in the Knox County portion of the Tennessee SIP and the Texas SIP have at all times relevant to this Complaint defined "major stationary source" to include Portland cement plants which emit or have the potential to emit one hundred tons per year or more of any regulated air pollutant. KCAQMR § 45.1.A.19; 30 Tex. Admin. Code § 116.160 (incorporating the federal PSD definition of "major stationary source" at 40 C.F.R. § 52.21(b)(1)(i)(*a*) (1996)).

31. Applicable provisions in the PSD regulations in the Knox County portion of the Tennessee SIP and in Texas SIPs have at all times relevant to this Complaint defined a "significant" net emissions increase to mean, *inter alia*, an increase in the rate of emissions that would equal or exceed 40 tons per year of $NO_x$. KCAQMR § 45.1.A.27; 30 Tex. Admin. Code §

116.160 (incorporating the federal PSD definition of "significant" at 40 C.F.R. § 52.21(b)(23)(i) (1996)).

### Title V Permit Requirements

32. Title V of the Act, Sections 501-507, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources" and any other source required to have a PSD permit. The purpose of Title V is to ensure that all "applicable requirements" that a source is subject to under the CAA, including PSD, SIP and other requirements, are collected in one permit. Following an interim approval, EPA granted final approval of the Title V programs of Knox County, Tennessee on April 30, 1996 (61 Fed. Reg. 18,966) and of Texas on November 30, 2001 (66 Fed. Reg. 63,318).

33. Section 502(a) of the Act, 42 U.S.C. § 7661a(a), 40 C.F.R. 70.7(b) and the Title V programs of Knox County and Texas, have at all relevant times made it unlawful for any person to violate any requirement of a permit issued under Title V or to operate a subject source except in compliance with a permit issued by a permitting authority under Title V.

34. Section 503(b) – (d) of the Act, 42 U.S.C. § 7661b(b)-(d), the Title V regulations at 40 C.F.R. §§ 70.5(a), (c), and (d) and the Knox County and Texas Title V programs, have at all relevant times required the owner or operator of a source to submit an application for a Title V permit that is timely and complete and which, among other things, identifies all applicable requirements (including any requirement to meet BACT pursuant to PSD), certifies compliance with all applicable requirements and contains a compliance plan for all applicable requirements for which the source is not in compliance. *Id*; *see* 40 C.F.R. §§ 70.5(a), (c), & (d); KCAQMR § 25.70.E.1, E.3, E.4; 30 Tex. Admin. Code §§ 122.130 -122.140.

35. Section 504(a) of the Act, 42 U.S.C. § 7661c(a), and 40 C.F.R. §70.6(a), and the Knox County and Texas Title V programs, have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Act and the requirements of the applicable SIP. These requirements include any PSD requirements, including the requirement to comply with an emission rate that meets BACT. KCAQMR § 25.70.B.5.b; 30 Tex. Admin. Code § 122.10(2)(H); 40 C.F.R. § 70.2.

## ENFORCEMENT PROVISIONS

36. Sections 113(a)(1) and (3) of the Act, 42 U.S.C. § 7413(a)(1) and (3), provide that the Administrator of EPA may bring a civil action in accordance with Section 113(b) of the Act, 42 U.S.C. § 7413(b), whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of, *inter alia*, (1) the PSD requirements of Section 165(a) of the Act, 42 U.S.C. § 7475(a); (2) Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or (3) a SIP or any permit issued thereunder. With respect to the Knoxville Facility, Knox County is also authorized to seek civil penalties and injunctive relief pursuant to Tenn. Code Ann. § 5-1-106 and by KCAQMR § 30.1 *et seq*.

37. Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator of EPA to initiate a judicial enforcement action for permanent or temporary injunction and/or for a civil penalty against any person whenever such person has violated, or is in violation of, *inter alia*, the requirements or prohibitions described in the preceding paragraph. Pursuant to Section 113(b), 42 U.S.C. § 7413(b), the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the Administrator of

10

EPA may seek civil penalties of up to $25,000 per day for each violation occurring on or before January 30, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and including March 15, 2004; up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring after January 12, 2009.

38. Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator of EPA to initiate an action for injunctive relief, as necessary to prevent the construction, modification or operation of a major emitting facility which does not conform to the PSD requirements in Part C of the Act. With respect to the Knoxville Facility, Knox County is authorized to seek civil penalties and injunctive relief pursuant to Tenn. Code Ann. § 5-1-106 and by Knox County Air Quality Management Regulation § 30.1 *et seq*.

## GENERAL ALLEGATIONS

39. At times pertinent to this civil action, Defendant Cemex, Inc., either under its present name or under its previous name, Southdown, Inc., has been an owner or operator of the Knoxville Facility; Defendant Cemex Constructions Materials Atlantic, LLC is and has been an owner or operator of the Knoxville Facility; and Defendants Cemex, Inc. and Cemex Construction Materials, South, LLC are or have been owners or operators of the Odessa Facility.

40. At all times pertinent to this civil action, the Knoxville and Odessa Facilities (collectively, the "Cemex Facilities") have produced cement as a result of conducting several sequential and related process activities. These process activities include, among other things, the quarrying of raw materials, the crushing of raw materials, the grinding and mixing of raw materials, the heating of raw materials in a kiln to produce clinker, the cooling of clinker in a

clinker cooler, and the mixing of clinker with other materials at a finish grinding system to produce cement.

41. During the clinker production process, the Cemex Facilities emit pollutants, including, but not limited to, $NO_x$.

42. At all times pertinent to this civil action, the Cemex Facilities were and are Portland cement plants and "major stationary sources," within the meaning of the Act and the PSD regulations of the applicable state SIPs, because they emit one hundred tons per year or more each of numerous air pollutants including, but not limited to, $NO_x$. 42 U.S.C. § 7479(1); KCAQMR § 45.1.A.19 (7); 30 Tex. Admin. Code § 116.3(a)(11); 30 Tex. Admin. Code § 116.160 (a); 30 Tex. Admin. Code § 116.12(10).

43. At all times pertinent to this civil action, the Cemex Facilities were and are "major sources" within the meaning of Title V of the Act and the federal Title V regulations, and the Title V regulations of the applicable state SIPs, because they emit or have the potential to emit one hundred tons per year or more of each of numerous air pollutants including, but not limited to, $NO_x$. 42 U.S.C. § 7661(2); 30 Tex. Admin. Code §§ 116.122.10(13) & 116.120(a)(1); KCAQMR § 25.70.B.15.

## **FIRST CLAIM FOR RELIEF**
(PSD Violations)

44. Paragraphs 1 through 43 are realleged and incorporated herein by reference.

45. EPA has conducted investigations of the Cemex Facilities, which included review of permitting history and emissions data, and analysis of other relevant information obtained from Defendants concerning construction, modification and operation of the plants. The United States and, with respect to the Knoxville Facility, Knox County, allege the following based on the results of EPA's investigations, and on information and belief.

46. Since the initial construction of the Cemex Facilities, the plants have undergone major modifications within the meaning of the PSD provisions. Such major modifications have resulted in a significant net emissions increase of $NO_x$ at each facility.

47. On information and belief, the modifications referred to in Paragraph 46 include: 1) from 2006 to 2009, switching from burning coal to burning pet coke as a primary fuel at both kilns at the Odessa Facility; and 2) from approximately 1995 until 1999, numerous physical changes that increased clinker production capacity at the Knoxville Facility including, but not limited to, modifications to the raw mill system, the clinker cooler, the preheater/induction draft fan and the kiln's primary air fan and drive.

48. Since commencement of the major modifications referred to in paragraphs 46-47, Defendants have been in violation of Section 165(a) of the Clean Air Act, 42 U.S.C. § 7475(a), and the corresponding applicable SIPs containing PSD requirements approved by EPA pursuant to Section 110(a)(2)(C), 42 U.S.C. § 7410(a)(2), by failing to undergo PSD review for major modifications which caused significant net emissions increases of $NO_x$, by failing to obtain a PSD permit, and by operating the modified facilities without meeting emission limitations equivalent to BACT.

49. Unless restrained by an Order of the Court, these violations of the Act and the implementing regulations are likely to continue.

50. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act (for PSD violations), 42 U.S.C. § 7477, and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject Defendants to both injunctive relief and civil penalties of up to $32,500 per day for each such violation occurring on or after March 16,

2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring after January 12, 2009.

51. With respect to the Knoxville Facility, the violations set forth above subject Defendants to civil penalties and injunctive relief as provided in Tenn. Code Ann. § 5-1-106 and by KCAQMR § 30.1 *et seq*.

**SECOND CLAIM FOR RELIEF**
(Title V Violation – Operation with a Deficient Permit)

52. Paragraphs 1 through 50 are realleged and incorporated herein by reference.

53. At all times relevant to this Complaint, the Cemex Facilities have each been a "major source" within the meaning of Section 501(2) of the Act, 42 U.S.C. § 7661(2), the federal implementing regulations at 40 C.F.R. § 70.2, and the applicable Texas and Knox County Title V regulations.

54. As set forth in paragraph 47, the Cemex Facilities have each undergone a major modification within the meaning of the PSD regulations. Such major modifications have resulted in significant net emission increases of $NO_x$. As a result, these modifications triggered the requirements to, among other things, obtain a PSD permit establishing emission limitations that meet BACT and to operate in compliance with BACT. Defendants have failed to comply with these requirements.

55. Defendants failed to submit a complete application for a Title V operating permit, or to supplement or correct such application and provide additional information to address requirements applicable after the filing of the application, for the Cemex Facilities. In particular, Defendants failed to submit Title V permit application that: identified all applicable requirements (including the PSD requirements and the requirement to meet BACT pursuant to PSD); certified compliance by a responsible official with all applicable requirements; and

14

contained a compliance plan for all applicable requirements for which the source was not in compliance, as required by Section 503(c) of the Act, 42 U.S.C. § 7661b(c), 40 C.F.R. § 70.5, and the applicable Texas and Knox County Title V regulations.

56. Defendants have failed to obtain proper or adequate Title V operating permits for each of the Cemex Facilities that contained emission limitations for $NO_x$ that met BACT as required by Section 504(a) of the Act, 42 U.S.C. § 7661c(a), and 40 C.F.R. §§ 70.1(b), 70.6(a), and the applicable Texas and Knox County Title V regulations. As a result, Defendants have operated the Cemex Facilities without meeting such limitations and without having an operating permit that requires compliance with such limitations or that contains a compliance plan for all applicable requirements for which the plant is not in compliance. Defendants' conduct has violated and continues to violate Sections 502(a), 503 and 504(a) of the Act, 42 U.S.C. §§ 7661a(a), 7661b and 7661c(a), and the related federal operating permit program regulations at 40 C.F.R. Part 70 and the applicable Texas and Knox County Title V regulations. Unless restrained by an order of this Court, these violations will continue.

57. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, the violations set forth above subject Defendants to either or both injunctive relief and civil penalties of up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring after January 12, 2009.

58. With respect to the Knoxville Facility, the violations set forth above subject Defendants to civil penalties and injunctive relief as provided in Tenn. Code Ann. § 5-1-106 and by KCAQMR § 30.1 *et seq*.

15

Case 3:16-cv-00471-HSM-HBG   Document 1   Filed 07/27/16   Page 15 of 18   PageID #: 15

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States, respectfully requests that this Court:

1. Order Defendants Cemex Inc. and Cemex Construction Materials, South, LLC to immediately comply with the state and federal statutory and regulatory requirements cited in this Complaint, under the Clean Air Act;

2. Order Cemex Construction Materials, South, LLC to remedy the past violations by, among other things, requiring it to employ BACT at the Odessa Facility for $NO_x$ emissions;

3. Order Cemex Construction Materials, South, LLC to apply for and comply with permits for Odessa Facility that conform to the requirements of the PSD provisions of the Act and the Texas SIP, as appropriate, and with Title V of the Act;

4. Order Defendants Cemex Inc. and Cemex Construction Materials, South, LLC to take other appropriate actions to address or offset the unlawful emissions of $NO_x$ attributable to the violations of the Clean Air Act alleged above;

5. Assess civil penalties against Defendants Cemex Inc. and Cemex Construction Materials, South, LLC for up to the amounts provided by applicable law;

WHEREFORE, Plaintiffs, the United States, and Knox County, respectfully request that this Court:

6. Order Defendant Cemex Construction Materials Atlantic, LLC to immediately comply with the state and federal statutory and regulatory requirements cited in this Complaint, under the Clean Air Act;

7. Order Defendant Cemex Construction Materials Atlantic, LLC to remedy its past violations by, among other things, requiring it to employ BACT at the Knoxville Facility for each pollutant subject to regulation under the Act;

8. Order Defendant Cemex Construction Materials Atlantic, LLC to apply for and comply with permits for Knoxville Facility that conform to the requirements of the PSD provisions of the Act and the Tennessee SIP, as appropriate, and with Title V of the Act;

9. Order Defendant Cemex, Inc., and Cemex Construction Materials Atlantic, LLC to take other appropriate actions to address or offset the unlawful emissions of $NO_x$ attributable to the violations of the Clean Air Act alleged above;

10. Assess civil penalties against Defendant Cemex, Inc. and Cemex Construction Materials Atlantic, LLC for up to the amounts provided by applicable law;

11. Award Plaintiffs their costs of this action; and,

12. Grant the Plaintiffs such other relief as this Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES:

_____
JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

_____
ANDREW W. INGERSOLL
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-1999 (Tel.)
(202) 514-0097 (Fax)
andrew.ingersoll@usdoj.gov

FOR KNOX COUNTY, TENNESSEE, ex rel, LYNNE LIDDINGTON, DIRECTOR OF AIR QUALITY MANAGEMENT FOR KNOX COUNTY, TENNESSEE:

_____
DANIEL A. SANDERS (BPR # 027514)
Deputy Law Director
Counsel for Knox County, Tennessee
City-County Building
400 Main Street, Ste. 612
Knoxville, TN 37902
(865) 215-2327
lawdir@knoxcounty.org

OF COUNSEL:

VALERIE NOWELL
Senior Attorney
U.S. Environmental Protection Agency, Region IV
61 Forsyth Street
Atlanta, Georgia

18